**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
(SOUTHERN DIVISION)

| | |
|---|---|
| MARLENE SMITH-HENRY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   **Civil Case No.: GLS-23-2154** |
| | ) |
| THE HONORABLE FRANK KENDALL, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

<u>**MEMORANDUM OPINION**</u>

Plaintiff Marlene Smith-Henry ("Plaintiff") has filed suit against the Defendant, The Honorable Frank Kendall, Secretary, Department of the Air Force ("Defendant"). (ECF No. 1, "Complaint").[1] The Complaint sets forth the following causes of action: Count I: race discrimination, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000(e) *et seq.*; Count II: color discrimination, in violation of Title VII; Count III: national origin discrimination, in violation of Title VII; Count IV: age discrimination, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621, *et seq.*; Count V: disability discrimination, in violation of the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101 *et seq.* and the Rehabilitation Act of 1973, 29 U.S.C. § 794; and Count VI: hostile work environment, in violation of Title VII. (*Id.*). Plaintiff seeks declaratory and injunctive relief as well as compensatory and punitive damages. (*Id.*, ¶¶ 10-12, 47, 48).

Pending before this Court is "Defendant's Motion to Dismiss and for Summary Judgment and Memo in Support" ("the Motion") (ECF No. 23). The motion to dismiss is based on a failure

---

[1] This case is before the undersigned for all proceedings with the consent of the parties pursuant to 28 U.S.C. § 636(c). (ECF No. 10).

to state a claim or, alternatively, seeks summary judgment. In support of the motion to dismiss are three exhibits, which constitute the "Investigative File, Complaint of Marlene Smith-Henry." (ECF Nos. 23-1 through 23-3). Plaintiff has filed an opposition, supported by a memorandum ("the Opposition"), in which she asks the Court to not construe the Motion as one for summary judgment because the parties have not yet engaged in discovery. (ECF Nos. 25, 25-1). In that Opposition, Plaintiff also responded to the Court's order and requested leave to amend her Complaint. (ECF Nos. 24, 25-1). The Defendant did not file a Reply, and the time for so doing has lapsed. *See* Local Rule 105.2 (D. Md. 2023).

The Court finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons that follow, I shall construe the Motion as a motion to dismiss and grant it in part and deny it in part. Any motion for summary judgment is therefore denied. I shall also grant Plaintiff's motion for leave to amend.

## I.    FACTUAL BACKGROUND[2]

### A.  The Complaint

#### *1.  Allegations Related to Discrimination, Including Hostile Work Environment*

Plaintiff is a Black, African American woman of Dutch, Swedish, German, and Scandinavian descent, and over the age of sixty. (Complaint, ¶ 13). From on or about March 30, 2020 through on or about November 4, 2020, Plaintiff worked as an Accounting and Budget Technician, GS-0503-07, for the 89th Aerial Port Squadron ("APS") located at Joint Base Andrews, Maryland. (*Id.*, ¶ 15). Plaintiff was hired under a Schedule A appointment, and was qualified to perform the work of an Accounting And Budgeting Technician. (*Id.*, ¶¶ 20, 52).

---

[2] Unless otherwise noted, the facts are taken from the Complaint, ECF No. 1. The facts are construed in the light most favorable to Plaintiff, the non-moving party. *See Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023).

During the relevant time period, Plaintiff was employed by Defendant, the Secretary of the Air Force, and reported directly to Air Terminal Manager Derrick Mobley. (*Id.*, ¶¶ 14, 16, 17, 19). Plaintiff also worked alongside the following sergeants: Virginia Klein, a White woman in her late twenties or early thirties; Jared Parsons, a White man in his mid to late thirties; Ashley O'Day, a White woman in her twenties; and Brian Ihnat, a White man in his twenties or thirties. (*Id.*, ¶¶ 34, 46(a), 46(e)).

The allegations set forth in the Complaint primarily focus on Mr. Mobley's treatment of Plaintiff. Plaintiff alleges that Mr. Mobley's consistent reprimands began as early as her second week on the job. (*Id.*, ¶ 29). At that time, Mr. Mobley told Plaintiff, in the presence of other employees, that she should have a secret security clearance. (*Id.*). However, Plaintiff was not aware of this requirement because it was not listed on the job listing when she applied for the position. (*Id.*, ¶ 29). Plaintiff was "set up for failure by Mr. Mobley because she was not properly trained to perform her position's essential functions." (*Id.*, ¶ 21).

Mr. Mobley impeded Plaintiff's work productivity by requiring her to upload all of her financial management course certificates to the agency's computer drive because he did not believe that she completed her training. (*Id.*, ¶ 42).

Mr. Mobley would leave stacks of invoices on Plaintiff's desk, without instructions, and expected Plaintiff to facilitate the payments. (*Id.*, ¶ 43). Plaintiff expressed her discomfort and concerns of overpayment to Mr. Mobley given that the invoices were duplicates and triplicates. (*Id.*). Mr. Mobley stated that he would electronically send the invoices to avoid duplicates but failed to do so, forcing Plaintiff to develop her own system to sort through duplicate invoices to determine which ones needed to be paid. (*Id.*, ¶¶ 21, 22, 43).

Mr. Mobley told Plaintiff that her work was "unacceptable," even though Plaintiff had not yet received the necessary documents to complete her assignment. (*Id.*, ¶ 40).

Mr. Mobley required Plaintiff to match her email signature to his and sent Plaintiff emails on etiquette after she emailed an IT employee who had frustrated her. (*Id.*, ¶ 32).

Mr. Mobley frequently reprimanded her. (*Id.*, ¶ 21). For example, he told Plaintiff that it was good that she had started her financial management training courses "because he knew someone who had lost her job because she did not complete it (sic) in time." (*Id.*, ¶ 42). He also yelled at Plaintiff for working on a training module during the time that Sgt. Klein was conducting a different training session. (*Id.*, ¶ 34). Plaintiff eventually completed her training courses while she was teleworking. However, when she returned to the office, Mr. Mobley told Plaintiff that "he was not going to mess with her." (*Id.*, ¶ 41). Later, an unnamed sergeant informed Plaintiff that Mr. Mobley could see whenever she "stopped working" on her company computer. (*Id.*). However, Plaintiff had not stopped working and completed her training modules. (*Id.*).

Regarding his attitude towards Plaintiff, he "frequently and consistently demonstrated a dismissive and unprofessional attitude" towards her, "attempting to intimidate Plaintiff by glaring at her when she spoke with colleagues and brushing her off when she attempted to speak with him." (*Id.*, ¶¶ 44, 131-140). For example, Mr. Mobley said, "no one wanted to hear it and she was the problem" when Plaintiff explained to Sgt. Parsons why she was having a difficult day. (*Id.*, ¶ 32). Another example: Mr. Mobley accused Plaintiff of "just sitting around" as she read a manual that he had given her while eating her breakfast. (*Id.*, ¶ 28). Next, Mr. Mobley asked "what else *do* you know?" when Plaintiff asked someone named Sgt. Inhat for help performing a task on her computer. (*Id.*, ¶ 33) (emphasis in original). In addition, on or about July 15, 2020, Mr. Mobley "basely accused [Plaintiff] of 'shenanigans' and of being secretive and dishonest as a federal

employee." (*Id.*, ¶ 22). And, Mr. Mobley "yanked open" Plaintiff's desk drawer to see its contents and removed Plaintiff's Keurig from her workstation. (*Id.*, ¶¶ 22, 30). Moreover, after Plaintiff returned from COVID-19 leave, Mr. Mobley appeared "giddy" when he learned that Plaintiff's negative COVID-19 test results indicated that she could have returned to work a day sooner. (*Id.*, ¶ 38). Mr. Mobley then grew frustrated by Plaintiff's daily email updates on her family's COVID-19 status, and stated that he no longer needed such updates given the high volume of emails he received on other matters. (*Id.*, ¶ 39).

Mr. Mobley treated Plaintiff less favorably than Sgt. Ihnat,[3] a White man in his twenties or thirties, for the following reasons. First, on about April 1, 2020, Mr. Mobley instructed Plaintiff to park across the street rather than the parking lot behind the building where Sgts. O'Day and Ihnat parked. (*Id.*, ¶ 46(a)). Although Mr. Mobley consistently and publicly reprimanded Plaintiff, he did not reprimand "Sgt. Ihnat and another sergeant who Plaintiff did not know well" when they "engaged in boisterous and loud behavior" that attracted the attention of individuals named Sgts. Hairston and Klein.[4] (*Id.*, ¶ 46(c)). Second, Mr. Mobley would not allow Plaintiff to use Sgt. Ihnat's heater, but allowed Sgt. Ihnat to continue using it. (*Id.*, ¶ 46(m)). Third, on one occasion, Sgt. Ihnat was talking about his hometown while his internet browser was open. Thereafter, Mr. Mobley reprimanded Plaintiff for using her computer to google Sgt. Ihnat's hometown, but said nothing to Sgt. Ihnat. (*Id.*, ¶ 46(l)). Fourth, Mr. Mobley instructed Plaintiff to organize her desk, keep her drawers unlocked, and warned Plaintiff to be careful with water bottles near her computer. However, Sgt. Ihnat's workspace was frequently disorganized, and he regularly locked his drawers. (*Id.*, ¶ 46(j)(k)).

---

[3] The Complaint fails to particularly describe Sgt. Ihnat beyond mentioning his race and age.
[4] The Complaint fails to particularly describe Sgts. Hairston and Klein, beyond providing their race and ages.

Mr. Mobley also treated Plaintiff less favorably than Sgt. Parsons and Klein. Specifically, when Plaintiff overheard and reported vulgar remarks by Sgt. Parsons, Mr. Mobley laughed and did not reprimand him. (*Id.*, ¶ 46(e)). Mr. Mobley also instructed Plaintiff to not eat sunflower seeds at her desk, even though Sgt. Parsons continued to do so. (*Id.*, ¶ 46(g)). And despite the fact that Sgt. Klein, a White woman in her late twenties or early thirties, would enter the building before the start of the workday to use the restroom, Mr. Mobley did not allow Plaintiff to do so. (*Id.*, ¶ 46(i)).

Finally, Plaintiff alleges that Mr. Mobley would only reprimand Plaintiff, even though her colleagues engaged in the same behavior. For example, during Plaintiff's conversation with "a White female colleague," Mr. Mobley only reprimanded Plaintiff for standing and talking. (*Id.*, ¶ 46(d)). Moreover, Mr. Mobley instructed Plaintiff to not use her personal phone during work hours, despite numerous colleagues doing the same. (*Id.*, ¶ 46(h)). Furthermore, on one occasion, Mr. Mobley verbally reprimanded Plaintiff for playing music at her desk, but other employees routinely did the same. (*Id.*, ¶ 31). According to Plaintiff, her termination followed Mr. Mobley's pattern of "frequently and consistently demonstrate[ing] a dismissive and unprofessional attitude," "regularly and consistently scrutinize[ing], singl[ing] out, and publicly reprimand[ing]" Plaintiff." (Complaint, ¶¶ 22, 34, 37, 40, 46, 46(o)).

In sum, Mr. Mobley's discrimination and harassment created a hostile work environment and was "for no reason other than her protected characteristics." (*Id.*, ¶¶45-47, 104-123).

### 2. *Allegations Related to Discrimination Based on Race, Color and National Origin*

Mr. Mobley made harassing comments towards her based on her color and national origin. (*Id.*, ¶ 21). Specifically, on or about August 11, 2020, Mr. Mobley made harassing comments towards Plaintiff due to her race, color, and national origin when Plaintiff brought Swedish

meatballs to work. (*Id.*, ¶¶ 21, 26, 50-103). Mr. Mobley said, "Mighty funny, you don't look Swedish to me," which Plaintiff found to be humiliating and demeaning because he implied that she could not be of Swedish descent as a Black woman. (*Id.*, ¶¶ 26, 73).

### 3. *Allegations Related to Disability*

Plaintiff suffers from asthma and diabetes. (*Id.*, ¶ 13). Due to her diabetes, Plaintiff had to monitor her blood pressure and eat regularly. (*Id.*, ¶ 24). In addition, Plaintiff's ankles would swell if she remained seated for long periods of time, causing her pain. (*Id.*, ¶ 36). Plaintiff's disability impacted her work performance, as she experienced difficulties concentrating due to the fatigue. (*Id.*, ¶ 24).

On or about April 21, 2020, Plaintiff informed Mr. Mobley of her diabetes. (*Id.*, ¶ 20). After Plaintiff informed her supervisors, including Mr. Mobley, that her diabetes required her to be able to eat at her desk, she was denied the ability to do so, even though Sgts. Parsons, Klein, O'Day, and Inhat regularly ate at their desks. (*Id.*, ¶¶ 20, 46(f)). Also, during her review, Mr. Mobley told Plaintiff that he expected her to sit at her desk, do work, and that he did not want to hire her. (*Id.*, ¶ 37).

Mr. Mobley "treated [her] differently from her similarly situated comparators when he would not allow her to request sick leave" the same day she needed it. Conversely, Mr. Mobley granted other employees sick leave when they arrived late to work. (*Id.*, ¶¶ 21-23). In addition, Mr. Mobley would accuse Plaintiff of leaving the office, although Plaintiff would only leave to pick up food since she could not eat at her desk. (*Id.*, ¶¶ 20, 25). Moreover, Mr. Mobley told Plaintiff that she "better sit down" after Plaintiff explained that she needed to stand because her ankles were painfully swollen. (*Id.*, ¶ 36).

From March 30, 2020 to November 4, 2020, Defendant denied Plaintiff's requests for sick leave and failed to offer Plaintiff reasonable accommodations for her diabetes. (*Id.*, ¶¶ 23, 124-130). Plaintiff would have greatly benefited from a flexible, remote-work schedule and a personal refrigerator at her workstation to manage her diabetes, but Defendant did not inform her of her right to request accommodations. (*Id.*, ¶ 20).

### 4. *Allegations Related to Age*

On April 1, 2020, Mr. Mobley treated Plaintiff less favorably than Sgt. Ihnat, Sgt. O'Day, and Sgt. Klein (White people in their twenties or thirties), by instructing Plaintiff to park across the street rather than in the rear parking lot behind the building where these sergeants were allowed to park. (Complaint, ¶ 46(a)). Next, on an unspecified date, Plaintiff overheard Sgt. Parsons (male in his mid-late 30s) make vulgar sexual remarks, Mr. Mobley laughed and did not reprimand him. (*Id.*, ¶ 46(e)). On another unspecified date, Mr. Mobley also instructed Plaintiff to not eat sunflower seeds at her desk, even though Sgt. Parsons, a younger male, was allowed to do so. (*Id.*, ¶ 46(g)). And despite the fact that Sgt. Klein could enter the building before the start of the workday to use the restroom, Mr. Mobley did not allow Plaintiff to do so. (*Id.*, ¶ 46(i)). Moreover, despite the fact that her diabetes required her to be able to eat at her desk, she was denied the ability to do so, even though younger individuals, namely Sgts. Parsons, Klein, O'Day, and Inhat regularly ate at their desks. (*Id.*, ¶¶ 20, 46(f)).

Sgts. Hairston and Klein told Plaintiff that she was the oldest person in the office and mocked her in the presence of "new hires" and called her "old." (*Id.*, ¶ 27). Sgt. Klein, who was younger than Plaintiff, "conducted a training from her desk, and Plaintiff listened to the lecture while continuing to complete a travel training module." Sgt. Klein yelled about Plaintiff about this and "later joked about having yelled." (Complaint, ¶ 34).

5. *Allegations Related to Formal Disciplinary Actions and Termination*

Mr. Mobley was similarly punitive when it came to Plaintiff's arrival time at work and in-person attendance at the job. One day, Plaintiff hit a deer on her way to work, and Mr. Mobley ignored Plaintiff when she tried to explain why she was tardy that day. However, Mr. Mobley regularly engaged and with other employees when they experienced similar incidents and personal issues that caused them to be late. (*Id.*, ¶ 46(n)). In addition, Mr. Mobley "left screaming voicemails for Plaintiff" when she did not come into the office in the mornings during a telework period, even though Plaintiff was not informed that she had to come into the office during this period. (*Id.*, ¶ 35). Moreover, Mr. Mobley accused Plaintiff of leaving the office during the workday when she left to get food. (*Id.*, ¶ 20).

On August 25, 2020, Mr. Mobley issued Plaintiff a Letter of Expectations for "being late to work." (*Id.*, ¶ 25). Thereafter, on September 24, 2020, Mr. Mobley issued Plaintiff a Letter of Warning for being late to work on August 28, 2020 and on September 15, 2020. (*Id.*). However, despite Mr. Mobley's allegations, Plaintiff was rarely late to work and explained to Mr. Mobley that her isolated tardiness was due to having to return home to pick up her laptop or unexpected traffic. Plaintiff also explained that Mr. Mobley falsely accused her of leaving work during the day when she would pick up food or items from vehicle during breaks. (*Id.*).

On November 4, 2020, Mr. Mobley terminated Plaintiff during her probationary period due to tardiness and difficulties with in-person work attendance. (*Id.*, ¶¶ 20, 22).

**B. First Charge of Discrimination**

On February 1, 2021, Plaintiff filed a formal complaint of discrimination ("First Charge") with the Equal Employment Opportunity Commission ("EEOC"), alleging race, color, national origin, age, and disability discrimination. (Complaint, ¶ 7).

The First Charge is attached to Defendant's Motion and includes  a narrative in Section 9 that sets forth the following as the bases of her discrimination claims:

> Beginning on or about March 30, 2020, through on or about November 4, 2020, I was not offered/denied a reasonable accommodation and not informed of my right to request one by my supervisor, Derrick Mobley, based on my disabilities, which he was aware of as I was hired under a schedule A appointment and informed him as well on or about April 21, 2020, of my disabilities. Beginning on or about March 30, 2020, through on or about November 4, 2020, I was set up for failure and was not properly trained to perform my Position's essential functions. Beginning on or about March 30, 2020, through on or about November 4, 2020, I was treated less favorably than my counterparts on leave requests and attendance.

(ECF No. 23-1, p. 6).  In Section 8 of the First Charge, in response to the question "Check Below Why You Believe You Were Discriminated Against," the following boxes were checked: race, color, national origin (Dutch, Swedish, German, Scandinavian), age (60), and disability. (*Id.*). On or about August 18, 2021, Plaintiff requested a hearing before the EEOC. (Complaint, ¶ 8). On March 21, 2023, the EEOC issued its final decision and right to sue letter. (Complaint, ¶ 9).

**C.  Second Charge of Discrimination**

On April 12, 2021, Plaintiff filed another Charge of Discrimination ("Second Charge") against Defendant. The narrative description in Section 9 of the Second Charge is identical to Section 9 of the First Charge. (ECF No. 23-3, p. 34). In Section 8 of the Second Charge, in response to the question "Check Below Why You Believe You Were Discriminated Against," only the following boxes were checked:  national origin (Dutch, Swedish, German, Scandinavian), age (60), and disability. (*Id.*).

## II.    DISCUSSION

### A.  Parties' Arguments

The Motion is styled as a motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, a motion for summary judgment under Fed. R. Civ. P. ("Rule") 56. (ECF No. 23).

In seeking dismissal, Defendant advances several arguments. First, that her race and color claims (Counts I and II) must be dismissed because Plaintiff failed to exhaust her administrative remedies. Second, that to the extent that any of her discrimination claims in Counts III – VI are predicated on facts other than those related to her termination, they are untimely raised in violation of the EEOC statutory reporting requirements. Third, other than her termination, Plaintiff fails to sufficiently plead other adverse employment actions. Fourth, Plaintiff fails to sufficiently connect her protected class status (age and national origin) to her termination. Fifth, the Complaint does not sufficiently plead severe or pervasive conduct necessary for a hostile work environment claim. Sixth, to the extent that Plaintiff asserts a claim under the ADA, it should be dismissed because she was a federal employee.  Alternatively, Defendant argues that summary judgment is warranted on Count V, including that Plaintiff cannot establish a *prima facie* case of disability discrimination (failure to accommodate claim) because she never requested an accommodation. Next, Plaintiff cannot satisfy her burden in establishing discriminatory termination because she cannot establish that Defendant's articulated reasons for firing her  (i.e., due to her tardiness and early departures), were pretextual. (Motion, pp. 8-17).

Plaintiff counters that dismissal of all counts in the Complaint is unwarranted for several reasons. First, regarding Counts I and II, Plaintiff sufficiently exhausted her administrative remedies related to her race and color discrimination claims. Second, any conduct arising before

October 31, 2020 is not time barred  because such acts are part of an ongoing pattern of harassment, which contributed to a hostile work environment. Third, Plaintiff sufficiently pleads factual allegations to support that she was subjected to severe or pervasive harassment. Fourth, the Complaint contains sufficient factual allegations to support plausible claims of relief for all counts. Fifth, Defendant's reason for terminating her was pretextual. Sixth, summary judgment is inappropriate on Count V, as discovery has not occurred, and the Complaint alleges sufficient facts to demonstrate her disability and need for accommodations for which Defendant denied. Alternatively, Plaintiff argues that if the Court is inclined to find factual discrepancies or deficiencies in the Complaint, then Plaintiff seeks leave to amend the Complaint. (Opposition, pp. 4-15).

**B.  Motion to Dismiss/Motion for Summary Judgment**

   *1.  Converting a Motion to Dismiss to a Motion for Summary Judgment*

When a movant characterizes a motion as a motion to dismiss or alternatively as a summary judgment motion, it implicates the Court' discretion under Rule 12(d). *Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F.Supp.2d 431, 436-37 (D. Md. 2011).

In general, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours v. Kolon Indus., Inc.*, 637 F3d 435, 448-49 (4th Cir. 2011); *see also Putney v. Likin*, 656 Fed. App'x 632, 639 (4th Cir. 2016) (per curiam) (same); *McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014) (same).

If a party opposes summary judgment, it must do so on the grounds that it requires discovery or needs more time for additional discovery. *Harrods Ltd v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002). A party adequately raises its need for discovery by

"fil[ing] an affidavit or declaration pursuant to Rule 56(d), explaining why … '[the party]'cannot present facts essential to justify its opposition' without needed discovery." *Yampiere v. Baltimore Police Dep't*, Civ. No. ELH-21-1209, 2023 WL 6049489, at * 19 (D. Md. Sept. 15, 2023) (citing Rule 56(d)). However, if a nonmoving party fails to file a declaration or an affidavit, a court should not grant summary judgment, as long as the court can find that "the motion is premature and that more discovery is necessary." *Yampiere*, 2023 WL 6049489, at * 19 (internal citation omitted).

In the instant case, Plaintiff did not file an affidavit or declaration, so she has not complied with Rule 56(d). However, in the Opposition, Plaintiff makes clear that she cannot fully present facts to counter the Motion without additional discovery. (Opposition, pp. 3, 4). But, that does not end the Court's analysis. To advance his argument for conversion under Rule 12(d), Defendant asks the Court to consider the "Investigative File, Complaint of Marlene Smith-Henry" ("the Investigative File"), which he attached to the Motion. (Motion, pp. 15-17; ECF Nos. 23-1, 23-2, 23-3). Relying on *Dabas v. Brennan*, Civ. No. CCB-17-392, 2018 WL 1300965, at *1 (D. Md. Mar. 13, 2018), Defendant asserts that because the Investigative File is voluminous, the parties have had an adequate opportunity for discovery. (Motion p. 6).

The Court finds Defendant's reliance on *Dabas* is misplaced and agrees with Plaintiff that discovery is premature. In *Dabas*, the defendant attached the EEOC administrative record to its motion to dismiss the complaint or, in the alternative, for summary judgment. In response, the plaintiff filed an opposition with exhibits attached in support thereto. Because plaintiff's opposition was titled as an opposition for summary judgment, the court found that the plaintiff had adequate notice that the motion might be converted to a motion for summary judgment. Even though the court noted that the administrative record was voluminous, it ultimately held that

conversion under 12(d) was appropriate because it would consider the affidavits and additional materials submitted by *both* parties. *Dabas*, 2018 WL 1300965, at *4.

In the instant case, however, Defendant's exhibits are not limited to the EEOC administrative record. Rather, Defendant also attached materials related to the Department of Air Force's internal investigation into Plaintiff's EEOC Complaint, as well as documents from Plaintiff's employee file. (*See* ECF Nos. 23-1, 23-2, 23-3). In addition, unlike in *Dabas*, Plaintiff did not attach exhibits in support of the Opposition, and she contests the factual findings of the Air Force's internal investigation. Thus, *Dabas* is readily distinguishable. Although the Investigative File includes documents from the EEOC administrative record, the Court declines to consider the entire Investigative File because it contains additional reports and documents related to Defendant's internal investigation of Plaintiff's complaints, for which Plaintiff has not had the opportunity to conduct discovery. *See Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v, Mayor & City Council of Baltimore*, 721 F.3d 264, 280 (4th Cir. 2013) (holding "[c]hief among its errors was the district court's award of summary judgment to the Center without allowing the City any discovery"). Thus, the Court finds that converting the Motion to a motion for summary judgment is inappropriate at this juncture. *Prosa v. Austin*, Civ. No. ELH-20-3015, 2022 WL 394465, at *11 (D. Md. Feb. 8, 2022) (declining to convert 12(b)(6) motion under Rule 12(d) where plaintiff seeks discovery related to issues of motive and pretext and information is within the control of the defendant).

Accordingly, the Court denies as premature Defendant's alternative request to convert the Motion to a motion for summary judgment. The Court will construe the Motion as a motion to dismiss.

### 2. Motion to Dismiss-Generally

If a court construes the Motion as a motion to dismiss under Rule 12(b)(6), a defendant is asserting that, even if a court construes the facts advanced in the plaintiff's complaint as true, the complaint fails to state a claim upon which relief can be granted. *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016); *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

To survive a motion to dismiss, a complaint must provide a defendant with "fair notice of what the claim is and the grounds upon which it rests." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)). Put another way, a complaint must allege sufficient facts to establish each element of a claim asserted. *Goss v. Bank of Am., N.A.*, 917 F. Supp. 2d 445, 449 (D. Md. 2013), *aff'd sub nom., Goss v. Bank of Am., N.A.*, 546 F. App'x 165 (4th Cir. 2013).

In addition, a complaint must satisfy the pleading standard set forth in Fed. R. Civ. P. 8(a) and contain facts "showing" entitlement to relief. *Twombly*, 550 U.S. at 555-56 (complaint must set forth enough facts as to suggest a "cognizable cause of action"). In other words, a complaint must do more than formulaically recite "the elements of a cause of action," or must do more than make "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Nemet Chevrolet, Ltd. V. Consumeraffairs.com*, Inc., 591 F.3d 250, 258 (4th Cir. 2009). A court "must be able to draw the reasonable inference [from the well-pleaded facts] that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When resolving a 12(b)(6) motion, a court accepts as true the well-pleaded allegations in a complaint. *Lokhova. V. Halper,* 995 F.3d 134, 141 (4th Cir. 2021). Furthermore, a court "does not resolve contests surrounding the facts [or] the merits of a claim." *Ray,* 948 F.3d at 226 (citation omitted).

It is well established that a court is not to resolve factual disputes between the parties when resolving a motion to dismiss. *Bosiger v. U.S. Airways,* 510 F.3d 442, 450 (4th Cir. 2007). However, when resolving a Rule 12(b)(6) motion, a court can choose to exercise its discretion and consider "matters outside of the pleadings." *See* Fed. R. Civ. P. 12(d).

### 3. Consideration of Documents Outside of Pleadings

In general, when a motion is filed pursuant to Fed. R. Civ. P. 12(b)(6), a court generally limits its review to the allegations in the complaint and documents that are "explicitly incorporated into the complaint by reference and those [properly] attached to the complaint as exhibits." *Goines v. Valley Cmty. Servs. Bd*., 822 F.3d 159, 166 (4th Cir. 2016)(further citation omitted). A court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterback v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir 2013).

A trial court enjoys "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." *Kelly v. Lease*, Civ. No. RDB-16-3294, 2017 WL 2377795, at *1 (D. Md. May 31, 2017) (quoting 5 C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1366 at 159 (3d ed. 2004, 2011 Supp.)).

Under certain circumstances, a court may consider additional documents outside of the pleading and not convert it to a summary judgment motion. Specifically, a court may consider

additional documents submitted by the movant, "that are not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no disputed about the document's authenticity." *See Goines*, 822 F.3d at 166 (citations omitted).  In order for a document to be construed as integral, "a plaintiff's claims must turn on, or otherwise be based on, the contents of the documents." *Yampiere*, 2023 WL 6049489, at * 23 (quoting *Brentzel v. Fairfax Transfer & Storage, Inc.*, 2021 WL 6138286, at * 2 (further citation omitted)).

In addition, in the context of a 12(b)(6) motion, a court "may properly take judicial notice of matters of public record." *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d. 602, 611 (D. Md. 2011) (internal quotation marks and further citation omitted). In employment discrimination cases, courts often take judicial notice of EEOC charges and EEOC decisions. *Yampierre*, 2023 WL 6049489, at *24 (internal quotation marks and citation omitted).

In the instant case, there are three categories of documents under possible consideration by the Court: (a) the First Charge (ECF No. 23-1, p. 7); (b) the Second Charge (ECF No. 23-3, p. 34); and (c) the Investigative File, which includes the EEO Counselor's Report. (ECF Nos. 23-1, 23-2, 23-3). Regarding the First Charge, Plaintiff did not attach the document to her Complaint, however, she refers to it in the Complaint, even though she does not expressly incorporate it into her pleading. (Complaint, ¶ 7). In addition, the Court can take judicial notice of the same. *Chesapeake Bay Found., Inc*,  794 F. Supp. 2d. at 611. Accordingly, the Court will exercise its discretion and consider the First Charge at this procedural juncture.  Regarding the Second Charge, the Complaint does not explicitly mention it, nor does she attach it to the Complaint. Defendant attaches the Second Charge to the Motion. Reviewing the Second Charge, the Court finds that Plaintiff's claims of national origin, age and disability discrimination are based at least in part on the contents of the Second Charge. (Complaint, ¶¶ 20-26, 36, 73, 124-130). Next, in her

Opposition, Plaintiff does not dispute that the Second Charge exits; indeed, her arguments against dismissal ask the Court to consider the context in which it was executed by Plaintiff. (Opposition, p. 5). Moreover, the Court can take judicial notice of the Second Charge. *Chesapeake Bay Found., Inc*, 794 F. Supp. 2d. at 611. Accordingly, the Court will exercise its discretion and consider the Second Charge at this procedural juncture. *Goines*, 822 F.3d at 166; *Yampierre*, 2023 WL 6049489, at *24 (where the court took judicial notice of the EEOC Charge attached as an exhibit to motion to dismiss).

However, regarding the Investigative file (which includes the EEO Counselor's Report), the Court declines to consider it, as it is not integral to the complaint, nor is it a matter of public record. *See Goines*, 822 F.3d at 166; *Yampierre*, 2023 WL 6049489, at *23.

In sum, the Court will only consider the First Charge and the Second Charge, and analyzes them below.

### C. Exhaustion of Title VII Claims: Counts I-II

Before filing suit under Title VII or the ADEA, a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC. *Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022) (citing 42 U.S.C. § 2000e-5(b), (f); 29 U.S.C. § 633a(d)). In addition, Rehabilitation Act claims "must comply with the same administrative procedures that govern federal employee Title VII claims." *Stewart v. Iancu*, 912 F.3d 693, 698 (4th Cir. 2019) *Wilkinson v. Rumsfeld*, 100 F. App'x 155, 157 (4th Cir. 2004).

An individual who alleges discrimination in violation of Title VII must first file an administrative charge with the EEOC within a certain time of the alleged unlawful act. *Chacko v. Patuxent Inst*., 429 F.3d 505, 508 (4th Cir. 2005) (citing 42 U.S.C. § 2000e–5(e)(1)). In the Fourth Circuit, if "the claims raised under Title VII exceed the scope of the EEOC charge and any charges

that would naturally have arisen from an investigation thereof, they are procedurally barred." *Id.* at 508 (quoting *Dennis v. County of Fairfax,* 55 F.3d 151, 156 (4th Cir.1995). However, an exception to this rule exists "[i]f a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in her subsequent civil suit." *Miles v. Dell, Inc*., 429 F.3d 480, 491 (4th Cir. 2005) (citing *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247–48 (4th Cir.2000)) (alterations in original) (internal quotation marks omitted).

While the Fourth Circuit "recognize[s] that EEOC charges often are not completed by lawyers and as such 'must be construed with utmost liberality,' [courts] are not at liberty to read into administrative charges allegations they do not contain." *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 408 (4th Cir. 2013) (quoting *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll*., 848 F.2d 457, 460 (4th Cir. 1988) (internal citation omitted). Thus, a claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex. *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009).

Defendant argues that Plaintiff failed to exhaust her claims for discrimination on the basis of race and color, necessitating dismissal of Counts I – II. Specifically, Defendant asserts that on the First Charge, Plaintiff checked boxes for discrimination and harassment based on race, color, national origin, disability, and age, however, on the Second Charge, Plaintiff only checked the boxes for national origin, age, and disability, which ultimately formed the basis of the EEOC's investigation. In response, Plaintiff argues that legal counsel did not represent her when she submitted the Second Charge and therefore, she did not recognize the significance of failing to check the boxes for race and color. Relying on *Chacko*, *supra*, and *Sydnor v. Fairfax Cnty., Va*,

681 F.3d 591 (4th Cir. 2012), Plaintiff further asserts that she exhausted her claims for race and color discrimination because they are reasonably related to the allegations in the Second Charge. (*Id.*, p. 5). The Court finds Plaintiff's reliance on *Chacko* and *Sydnor* misplaced.

In *Chacko*, the plaintiff filed an EEOC charge alleging discrimination based on his national origin when he was denied a promotion, subjected to a hostile work environment, and retaliated against. The EEOC charge recited specific allegations on specific dates that that his supervisors harassed him, denied him a promotion and created a hostile work environment, and there was no mention of harassment by co-workers. However, at trial, in support of his hostile work environment claim, plaintiff alleged that his co-workers regularly hurled national-origin insults at him, and that his supervisors did not discipline the co-workers and may have participated in the derogatory comments. The jury entered a verdict in favor of plaintiff on the hostile work environment claim. On appeal, the defendant alleged that his focus at trial on the coworkers' conduct exceeded the scope of what had been alleged in his administrative charges. The Fourth Circuit agreed, finding that the administrative charges against his supervisors were not reasonably related to the hostile work environment evidence adduced at trial. Because the Plaintiff had not exhausted his administrative remedies on this claim, dismissal was appropriate. 429 F.3d at 511. In *Sydnor*, the plaintiff was terminated and filed a charge with the EEOC alleging discrimination because her employer failed to accommodate her generalized request to perform light duty work due to her disability. The EEOC charge did not describe the accommodation that plaintiff requested. The plaintiff subsequently filed a lawsuit in federal court alleging disability discrimination, namely that her employer failed to accommodate her need to perform work as a clinical nurse in a wheelchair. Following some discovery, the trial court dismissed plaintiff's case *sua sponte*, finding that plaintiff had failed to exhaust her administrative remedies. On appeal, the

Fourth Circuit reversed the lower court's decision, finding that plaintiff's description of her disability and her underlying claims of failure to accommodate did not change, even though there was a variance in the type of accommodation mentioned in the charge versus the accommodation requested when she filed suit. The appellate court held that the plaintiff had exhausted her administrative remedies because the accommodation requests in the charge and the lawsuit were reasonably related, her descriptions of her disability remained the same, and the lawsuit and the charge both claimed that the defendant failed to accommodate her physical impairments. 681 F.3d at 595.

In the instant case, the Second Charge is the operative charge, a fact that Plaintiff impliedly does not dispute in her Opposition. Thus, the Court must first focus on whether the allegations in the First Charge can be construed to be reasonably related to the allegations advanced in the Second Charge. Even when viewing the facts in the light most favorable to Plaintiff, comparing the First and Second Charges, there is nothing in the former document, including the narrative, to which the Court can turn to find that the race and color allegations raised in the First Charge are reasonably related to the Second Charge. There is nothing in the Second Charge that puts the Defendant on notice of alleged violations related to race and color. Although the Court is mindful that Plaintiff was not represented when she filed the Second Charge, the Court is "not at liberty to read into administrative charges allegations they do not contain." *Balas*, 711 F.3d at 408 (internal quotation marks and citations omitted. Thus, the Court finds that Count I and Count II of the Complaint are not reasonably related to the Second Charge because Plaintiff alleges different bases of discrimination. *See Jones*, 551 F.3d at 300 (finding plaintiff failed to exhaust claims where the EEOC charge alleges discrimination on one basis and the formal litigation claim alleges discrimination on a separate basis"); *see also Washington v. First Transit, Inc.*, Civ. No. GJH-17-

3747, 2018 WL 3642602, at *5 (D. Md. Aug. 1, 2018) (finding plaintiff failed to exhaust administrative remedies for national origin claims when EEOC charge only checked box for race and sex).

Accordingly, Counts I and II are dismissed, with prejudice, as amendment would be futile. *See Yampierre*, 2022 WL 3577268, at *46 (dismissal with prejudice where Title VII claim is barred for failure to exhaust).

### D. Counts III-VI: Timeliness, Adverse Employment Action, Causation and Hostile Work Environment

#### 1. Timeliness: Contact with EEOC Counsellor within 45 Days

Defendant argues that Counts III – VI, to the extent that they are predicated on discriminatory adverse employment actions other than her termination on November 4, 2020, must be dismissed. In particular, relying upon the Administrative Record, Defendant argues that Plaintiff initially contacted the EEOC Counselor on December 15, 2020, so any discrimination claims that occurred before October 31, 2020 are untimely. In the Opposition, Plaintiff argues that discrete claims of discrimination occurring before October 31, 2020 may be considered under the continuing violation doctrine, because she timely filed a hostile work environment claim.

Amongst other requirements, a federal government employee "must initiate contact with a Counselor within 45 days of the matter alleged to be discriminatory." *Smith v. Vilsack*, 832 F. Supp. 2d 573, 581 (D. Md. 2011) (citing 29 C.F.R. § 1614.105(a)(1)). Any  acts of discrimination that occurred prior to the applicable reporting period are procedurally barred, which means that a plaintiff cannot use such acts as a basis for recovery. *Gilliam v. S.C. Dept. of Juvenile Justice*, 474 F.3d 134, 139 (4th Cir. 2007).  This procedural bar also precludes reliance upon "discrete acts that are related to acts alleged in timely filed charges." *Angelini v. Baltimore Police Dep't.*, 464 F. Supp. 3d 764, 787(D. Md. 2020)(citing *Gilliam*, 474 F.3d at 139). Thus, if a plaintiff "fails to seek

EEOC counseling within the prescribed period,[a court must dismiss] an employment discrimination claim." *Battle v. Burwell*, Civ. No. PWG-14-2250, 2016 WL 4993294, at *4 (D. Md. Sept. 19, 2016) (citing *Van Durr*, 2013 WL 4087136, at *4).

As a preliminary matter, as set forth below in Sections II.E., II.F., and II.D.3.i. the Court also separately analyzes certain issues presented related to the ADA and the Rehabilitation Act claims advanced in Count V and the ADEA claim advanced in Count IV.

Turning to Counts III – VI, even when viewing all facts in the Complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff failed to plead with sufficiently particularity facts to demonstrate when she first contacted the EEO Counselor. As held earlier, the Court declines to consider the Administrative Record at this juncture. Without any facts to establish that Plaintiff contacted an EEO counselor within 45 days of Defendant's alleged discriminatory conduct, the Court cannot determine whether any individual discrimination claims other than her termination claim are untimely. Thus, Counts III – VI of the Complaint—to the extent that they raise claims of discrimination for discrete acts that are untimely-- must be dismissed without prejudice.[5] *See Upshaw v. Tenenbaum*, Civ. No. PWG-12-3130, 2013 WL 3967942, at *5 (D. Md. July 31, 2013) ("A prospective plaintiff's failure to contact an EEO Counselor within the 45 days prescribed 'is tantamount to failure to timely exhaust all administrative remedies' and 'ordinarily results in dismissal of a complaint of discrimination'")(quoting *Blount v. Dep't of Health & Human Servs.,* 400 F.Supp.2d 838, 841 (D.Md.2004)).

As set forth herein, Plaintiff will be granted leave to amend.

---

[5] Defendant has also moved for summary judgment on Count V-Rehabilitation Act claim, which the Court denies. *See* Section II.F. To the extent that Plaintiff desires to continue to advance a Rehabilitation Act (failure to accommodate) claim in any amended complaint that she will file, those acts must be timely.

2. *Adverse Employment Action (Counts III, IV)*

Defendant also argues that Plaintiff has failed to sufficiently plead any adverse employment action other than her termination.

In this Circuit, an "adverse employment action" is defined as "a discriminatory act [that] adversely affects the 'terms, conditions, or benefits' of employment." *Washington v. Baltimore City Police Dep't*, Civ. No. LKG-22-02212, 2023 WL 6308090, at *3 (D. Md. Sept. 28, 2023) (citing *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004). Some examples of an adverse action include an action that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir.2011) (citation omitted).

Regarding a reprimand by a supervisor, "being reprimanded by a supervisor does not, on its own, amount to an adverse employment action, so long as the reprimand does not lead to a 'significant change in employment status[.]'" *Yampierre*, 2022 WL 3577268, at *25 (quoting *Hoyle*, 650 F.3d at 321) (alternations in original); *see also Darnell v. Tyson Foods, Inc*, 536 F. App'x 366, 369-70 (4th Cir. 2013)(per curium)(formal written reprimand for "insufficient performance," by itself, does not amount to an adverse employment action).

Despite constructing the facts in Plaintiff's favor, other than her termination, none of the other allegations are pleaded in such a way as to constitute an adverse employment action. Regarding Mr. Mobley's reprimands, Plaintiff alleges that Mr. Mobley's consistent reprimands of her began as early as her second week on the job. (Complaint, ¶¶ 21, 29). For example, he told Plaintiff that it was good that she had started her financial management training courses "because he knew someone who had lost her job because she did not complete it (sic) in time." (*Id.*, ¶ 42).

He also yelled at Plaintiff for working on a training module during the time that Sgt. Klein was conducting a different training session. (*Id.*, ¶ 34). Furthermore, Mr. Mobley consistently and publicly reprimanded Plaintiff, but he did not reprimand "Sgt. Ihnat and another sergeant who Plaintiff did not know well" when they "engaged in boisterous and loud behavior" that attracted the attention of individuals named Sgts. Hairston and Klein. (*Id.*, ¶ 46(c)). And, on one occasion, Sgt. Ihnat was talking about his hometown while his internet browser was open. Thereafter, Mr. Mobley reprimanded Plaintiff for using her computer to google Sgt. Ihnat's hometown, but said nothing to Sgt. Ihnat. (*Id.*, ¶ 46(l)).  Even when construing these allegations in Plaintiff's favor, as currently pleaded, they do not suggest that a significant change in her employment status as to constitute adverse employment actions. *Yampierre,* 2023 WL 6049489, at *25.

Next, Plaintiff alleges other discriminatory conduct by Mr. Mosely. For example, on or about July 15, 2020, Mr. Mobley "basely accused her of 'shenanigans' and of being secretive and dishonest as a federal employee." (Complaint, ¶ 22). Mr. Mobley also "frequently and consistently demonstrated a dismissive and unprofessional attitude," and "regularly and consistently scrutinized, singled out, and publicly reprimanded" Plaintiff. (Complaint, ¶¶ 22, 34, 37, 40, 46, 46(o)). In addition, Mr. Mobley "yanked open" Plaintiff's desk drawer to see its contents and removed Plaintiff's Keurig from her workstation. (*Id.*, ¶¶ 22, 30). As currently pleaded, none of these actions constituted a "significant change in employment status" to constitute an adverse employment action. *See generally Washington*, *supra,* 2023 WL 6308090, at *7 (dismissing ADEA claim where plaintiff fails to allege adverse employment action).

Thus, Counts III, and IV of the Complaint-- related to adverse employment actions other than her termination-- must also be dismissed without prejudice. As set forth below, Plaintiff will be granted leave to amend.

### 3. *Causation (Counts III, IV, VI)*

Defendant also contends that Plaintiff fails to sufficiently plead that any adverse action taken by the Defendant was causally related to her protected status.

#### i. <u>Age Discrimination</u>

The ADEA creates a cause of action for certain federal employees over the age of 40 who allege discrimination due to age. *Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006) (citing 29 U.S.C. § 633(a)). To establish a prima facie case for age discrimination under the ADEA, a plaintiff is required to demonstrate that:

> (1) she is a member of a protected class; (2) her job performance was satisfactory; (3) she was subjected to an adverse employment action; and (4) similarly situated employees outside her class received more favorable treatment.

*Washington v. Baltimore City Police Dep't*, 2023 WL 6308090, at *3 (D. Md. Sept. 28, 2023) (citing *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 285 (4th Cir. 2004)). In addition, a plaintiff "must demonstrate that age was the 'but for' cause of such treatment." *Belyakov v. Med. Sci. & Computing*, 86 F. Supp. 3d 430, 441 (D. Md. 2015) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177, (2009) and *EEOC v. Balt. Cnty.*, 747 F.3d 267, 273 (4th Cir. 2014)).

At the motion to dismiss stage, however, a plaintiff need not establish a prima facie case of ADEA discrimination. Rather, consistent with Rule 8(a), a complaint must set forth sufficient facts to "support a reasonable inference" that a decision maker who subjected a plaintiff to an adverse employment action was "motivated by bias." *Washington*, 2023 WL 6308090, at *4 (D. Md. Sept. 28, 2023) (citing *McCleary-Evans*, 780 F.3d 582, 586 (4th Cir. 2015)).

Defendant argues that Count IV should be dismissed because the Complaint lacks any factual allegations connecting Plaintiff's protected class (age) to her termination. Plaintiff counters

that the Complaint contains facts to sufficiently state a claim for age discrimination. In the alternative, Plaintiff requests the opportunity to amend the Complaint.

Even when construing the facts in the Complaint in the light most favorable to Plaintiff, the Court finds only allegation that explicitly refers to Plaintiff's age involved Sgts. Hairston and Klein calling her "old" in front of new hires. (Complaint, ¶ 27). Plaintiff fails to adequately plead anything about the roles of Sgts. Hairston and Klein-e.g., are they her supervisors? And, Plaintiff fails to articulate any adverse employment action taken by these individuals.

Next, even when construing the facts in Plaintiff's favor, many of the remaining allegations about age are general in nature; Plaintiff mentions the age of others, but fails to particularly allege that how Mr. Mosley treated her was due to her age, and fails to connect these allegations to a specific adverse employment action that he took. *See, e.g.*, Complaint, ¶¶ 20, 25, 35, 46(a), 46(e), 46(f), 46(g), 46(i), 46(n). Ultimately, these general allegations are insufficient to connect Plaintiff's protected class to her termination or to any adverse employment action. Put another way, there is no dispute that Mr. Mobley terminated her. However, according to Plaintiff, Mr. Mobley ultimately terminated Plaintiff due to her alleged tardiness. (*Id.*, ¶¶ 22, 34, 37, 40, 46, 46(o)).  Plaintiff fails to set forth any facts to plausibly demonstrate that she suffered this adverse action because of her age.

In sum, when viewing the facts in Plaintiff's favor, the Complaint fails to sufficiently allege facts, if proven, state a claim of discrimination under the ADEA. *See Yampierre*, 2022 WL 3577268, at *25 (dismissal of complaint where plaintiff failed to allege facts to plausibly demonstrate consequences resulting from reprimands). Accordingly, Count IV-- related to establishing causation between her protected class and her termination-- must also be dismissed without prejudice. As set forth below, Plaintiff will be granted leave to amend.

ii.  <u>National Origin</u>

Regarding her national origin, even when construing the facts in Plaintiff's favor, assuming that it is true that on or about August 11, 2020, Mr. Mobley said "Mighty funny, you don't look Swedish to me" (which Plaintiff found to be humiliating and demeaning because he implied that she could not be of Swedish descent as a Black woman), *see* Complaint, ¶¶ 26, 73, these allegations of harassment do not adequately set forth facts to connect the harassment to any particular adverse employment action.  *See, e.g.*, Complaint, ¶¶  20, 25, 28, 29, 46(g), 46(i), 46(k), 46(n).  Relatedly, even when drawing all inferences in Plaintiff's favor, the Complaint is devoid of sufficient facts to plausibly demonstrate that Mr. Mobley's termination was based on her national origin.

Thus, Count III  of the Complaint-- related to establishing causation between her protected class and her termination-- must also be dismissed without prejudice. As set forth below, Plaintiff will be granted leave to amend.

4.  *Hostile Work Environment (Count VI)*

Defendant argues that the Complaint lacks sufficient facts to establish severe and pervasive conduct, and therefore Plaintiff failed to state a claim of hostile work environment claim. In opposition, Plaintiff argues that the Complaint contains sufficient factual allegations to demonstrate that she was subjected to pattern of ongoing harassment, including conduct that occurred before October 2020 and continued until her termination, such that dismissal of Count VI is improper.

A hostile work environment is said to exist "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." *Chang Lim v.*

*Azar*, 310 F. Supp. 3d 588, 599 (D. Md. 2018) (quoting *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (en banc)).

To prove a claim of hostile work environment under Title VII, a plaintiff must establish that:

> (1) she experienced unwelcome harassment; (2) the harassment was based on the plaintiff's race, color, religion, national origin, or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and to create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer.

*Chang Lim, supra.* at 599 (further citation omitted).

It is well established in the Fourth Circuit that "plaintiffs must clear a high bar in order to satisfy the severe or pervasive test." *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). In order to determine whether conduct is severe or pervasive, a court "must look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 421 (4th Cir. 2014) (quoting *E.E.O.C. v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 176 (4th Cir. 2009) (internal quotation marks omitted)).

It is also worth noting that status of the harasser is plays a "significant factor" that should be considered; namely, "harassment by a supervisor tends to be more serious, while harassment by a co-equal is less serious." *McIver v. Bridgestone Americas, Inc.*, 42 F.4th 398, 408 (4th Cir. 2022) (citation omitted). However, "rude treatment by coworkers, callous behavior by one's superiors, or a routine difference of opinion and personality conflict with one's supervisor are not actionable under Title VII." *Lazarte v. Montgomery Cnty. Pub. Sch.*, Civ. No. DLB-20-1515, 2021

WL 5770281, at *7 (D. Md. Dec. 6, 2021) (quoting *Sunbelt Rentals*, 521 F.3d at 315–16 (internal quotation marks omitted) (cleaned up).

Furthermore to be viable, "hostile work environment claims often involve repeated conduct ... because, 'in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.'" *Boyer-Liberto v. Fontainebleau Corp*., 786 F.3d 264, 277 (4th Cir. 2015) (en banc). That being said, however, the Fourth Circuit has held that an "isolated incident[ ]" of harassment can "amount to discriminatory changes in the terms and conditions of employment," if that incident is "extremely serious. *Id*. (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (alterations in original)).

Moreover, with respect to a Title VII hostile work environment claim, under the "continuing violation doctrine," a plaintiff may recover "for discriminatory acts that otherwise would be time-barred[,] as [] long as [at least one of the other acts] fell within the limitations period and the acts are part of an ongoing pattern of discrimination." *Angelini*, 464 F. Supp. 3d at 787 (citing *Gilliam*, 474 F.3d at 140). Thus, "even if a claim of discrimination based on a single discriminatory act is time barred, that same act could still be used as part of the basis for a hostile-work-environment claim, so long as one other act that was part of that same hostile-work-environment claim occurred within the limitations period." *Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 223 (4th Cir. 2016) (quoting *Green v. Brennan*, 578 U.S. 547, 562, n. 7 (2016)) (internal quotation marks omitted).

The Complaint contains a general statement  suggesting the Mr. Mobley created a hostile work environment "for no reason other than her protected characteristics." (Complaint, ¶ 45). As a preliminary matter, other than this general allegation, even when construing all of the facts in Plaintiff's favor, Plaintiff fails to adequately plead a causal connection between her protected

status and adverse acts by Mr. Mosely. Put another way, Plaintiff has failed to clearly plead that Mr. Mobley's so-called harassment of her was due to her age or to her national origin. *See, e.g.*, Complaint, ¶¶ 20, 25, 35, 46(a), 46(e), 46(f), 46(g), 46(i), 46(n). Because Plaintiff fails to establish the second element of a hostile work environment claim, Count VI is dismissed without prejudice. As held below, Plaintiff will be given an opportunity to amend the Complaint.

Even though the Court has dismissed Count VI, the Court briefly turns to the third element of a hostile work environment claim, in the event that Plaintiff is able to adequately plead that her harassment was due to her national origin or her age. Plaintiff alleges that Mr. Mobley "created a hostile work environment culminating in Plaintiff's termination during her probationary period on November 4, 2020." (Complaint, ¶ 137). When construing the other allegations in the Complaint in Plaintiff's favor, and examining the totality of the circumstances surrounding those facts, the Court could allow Plaintiff's hostile work environment claim to proceed, finding that the continuing violation theory could apply, and that the discrimination, as pleaded, was "near[ly] constant," "impacted [her] work performance," or "unreasonably interfere[d]" with her work performance. *See, e.g.*, Complaint, ¶¶ 21, 22, 28-30, 32-34, 39, 40, 42, 43, 44, 47, 131-140.

### E.  Disability Discrimination under the ADA (Count V)

In this case, Defendant argues that Plaintiff cannot bring suit under the ADA because the Rehabilitation Act provides an exclusive remedy to federal employees alleging discrimination based on a disability. Plaintiff does not respond the Defendant's argument in her Opposition.

The ADA does not apply to the federal government, its agencies, or employees. *Foreman v. Unnamed Officers of the Fed. Bureau of Prisons*, Civ. No. DKC-09-2038, 2010 WL 2720817 (D. Md. July 7, 2010), *adhered to on reconsideration,* Civ. No. DKC-09-2038, 2010 WL 4781333 (D. Md. Nov. 17, 2010) (citing 42 U.S.C. § 12111(5)(B)(i)); *see also Clarke v. Runyon*, Civ. No.

Case 8:23-cv-02154-GLS   Document 28   Filed 09/23/24   Page 32 of 35

HAR 94-3449, 1995 WL 328509, at *1 (D. Md. May 16, 1995). Thus, the Court finds that Plaintiff's claims under the ADA are not cognizable. *See also Peppers v. Moubarek*, Civ. No. PWG-19-2346, 2020 WL 5759763, at *1 (D. Md. Sept. 25, 2020) (citing *Cellular Phone Taskforce v. FCC*, 217 F.3d 72,73 (2d Cir. 2000) (holding that the Federal Communications Commission cannot be held liable under Title II of the ADA because it does not apply to the federal government).

Accordingly, the Court dismisses Count V, with prejudice, to the extent that Plaintiff asserts a claim under the ADA. *See Maryland v. Washington Metro. Area Transit Auth.*, Civ. No. TDC-14-3397, 2015 WL 4389885, at *9 (D. Md. July 13, 2015) (dismissal with prejudice of ADA claim because discrimination claim could only be brought against employer not individual supervisors).

### F.  Rehabilitation Act: Count V

Defendant argues that he is entitled to summary judgment on Plaintiff's failure to accommodate claim because she never requested an accommodation. In support of the argument, Defendant points to the Investigative File, which the Court has already held it will not consider at this juncture. *See* Section II.B.3. Plaintiff counters that summary judgment is inappropriate because she pleaded sufficient factual allegations to support a plausible claim of relief for failure to accommodate.

As held above in Section II.B.1., the Court declines to convert the motion into a summary judgment motion. Accordingly, the Defendant's motion for summary judgment related to Count V, Rehabilitation Act, is denied.

32

### G. Discriminatory Termination: Pretext

Defendant also alleges that it is entitled to summary judgment on Plaintiff's claim for discriminatory termination because Plaintiff concedes that she was dismissed due to tardiness. Plaintiff counters that she makes no such concession, and that were only isolated incidents of tardiness.

As held above in Section II.B.1., the Court declines to convert the motion to a summary judgment motion. Accordingly, the Motion is denied on this issue.

### H. Request for Leave to Amend

In her Opposition, Plaintiff requests leave to Amend her Complaint. Defendant did not file a Reply or respond to Plaintiff's requested leave.

Pursuant to Fed. R. Civ. P. 15(a)(1)(A), a party "may amend its pleading once as a matter of course no later than 21 days after serving it." Fed. R. Civ. P. 15(a)(1)(A). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "[J]ustice does not require permitting leave to amend when amendment would prejudice the opposing party, the moving party has exhibited bad faith, or amendment would be futile." *Williams v. Fontanez*, Civ. No. GLR-22-1882, 2023 WL 3819296, at *5 (D. Md. June 5, 2023) (citing *Edell & Assocs., P.C. v. Law Offices of Peter G. Angelos*, 264 F.3d 424, 446 (4th Cir. 2001)).

The Court finds *Iwebo v. Sheppard Pratt Health Sys., Inc.*, Civ. No. BPG-19-3008, 2020 WL 4748579, at *7 (D. Md. Aug. 14, 2020) instructive. In *Iwebo*, the defendant filed a motion to dismiss or in the alternative a motion for summary judgement after plaintiff brought claims of discrimination under Title VII, the ADEA, and the ADA. In the opposition, the plaintiff requested leave to amend. Specifically, the plaintiff stated that "[t]he Court Should Plaintiff an Opportunity

to Amend Pleadings [sic]." 2020 WL 4748579, at *7. The court dismissed four counts of plaintiff's complaint, without prejudice, for failure to allege sufficient facts to support a claim. However, the court found that plaintiff failed to "explain the nature of her proposed amendments nor did she include a proposed amended complaint as required by Local Rule 103.6." *Id*. Because the court determined that plaintiff might be able to amend her complaint to cure the deficiencies it had identified, the court held that plaintiff could seek leave to amend the complaint in accordance with the requirement of Rule 15(a)(2) and Local Rule 103.6. *Iwebo*, 2020 WL 4748579, at *1-13.

The same is the case here, as simply Plaintiff requests leave to amend her Complaint "[f]or any identified factual discrepancies or deficiencies and to the extent that the Court may deem appropriate." (Opposition, p. 14). Following *Iwebo*, then, the Court finds insufficient Plaintiff's generalized statement seeking leave to amend. However, as held herein, the Court finds good cause to grant Plaintiff leave to amend in attempt to cure the deficiencies identified in this Memorandum Opinion.

In sum, the Court has dismissed Counts III, IV, and VI without prejudice. Plaintiff may seek leave to amend in  accordance with the requirements set forth in Rule 15(a)(2) and Local Rule 103.6 within thirty (30) days of the date of this Opinion. *See Iwebo*, 2020 WL 4748579, at *13. Plaintiff is reminded that, to properly do so, she must follow the dictates of this Memorandum Opinion.

III.    **CONCLUSION**

For the foregoing reasons, the Motion to Dismiss, (ECF No. 23), is hereby **GRANTED IN**

**PART, DENIED IN PART.**

A separate Order will follow.


Dated: September 23, 2024                              _____/s/_____
                                                      The Honorable Gina L. Simms
                                                      United States Magistrate Judge

35